UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEW JERSEY

Dean G. Sutton, Esq.
18 Green Road
Post Office Box 187
Sparta, New Jersey 07871
(973) 729-8121
dean@deansuttonlaw.com
Attorney for the Debtor

**Order Filed on September 14, 2021
by Clerk,
U.S. Bankruptcy Court
District of New Jersey**

In Re:

American Limousine LLC

Case No.:    21-10121/SLM

Chapter:    11 (Subchapter V Small Business)

Hearing Date:    September 14, 2021

Judge:    Honorable Stacey L. Meisel

## ORDER CONFIRMING PLAN

The relief set forth on the following pages, numbered two (2) through three (3) is
hereby **ORDERED**.

**DATED: September 14, 2021**

Honorable Stacey L. Meisel
United States Bankruptcy Judge

Debtor:   American Limousine LLC
Case No. 21-10121/SLM
Caption of Order: Order Confirming Plan

The First Modified Plan under Subchapter V of Chapter 11 of the Bankruptcy Code filed by the Debtor, American Limousine LLC, on July 29, 2021; and

It having been determined after hearing on notice that the requirements for confirmation set forth in 11 U.S.C. § 1191(a) have been satisfied;

IT IS ORDERED that:

The First Modified Plan filed by the Debtor, American Limousine LLC, on July 29, 2021 is confirmed; and it is further

ORDERED, that the Debtor will act as disbursing agent and will disburse all funds in accordance with the Debtor's Plan; and it is further

ORDERED, that as to the executory contracts between the Debtor and Star2Star Communications, LLC, the Debtor shall assume the contracts. The Debtor shall pay for ongoing services in the ordinary course of business; and it is further

ORDERED, that the Plan is amended to provide that monthly payments to the Class #1 creditor, M&T Bank shall commence on October 1, 2021 instead of September 1, 2021 and shall continue through April 1, 2025 instead of March 1, 2025. Additionally, the adequate protection payments in the amount of $5,000.00 being paid by the Debtor to M&T Bank shall continue through September, 2021; and it is further

ORDERED, that to the extent that any of the terms of this Order is inconsistent with any of the terms of the Debtor's Plan, the terms of this Order control; and it is further

Page 3
Debtor:  American Limousine LLC
Case No. 21-10121/SLM
Caption of Order: Order Confirming Plan

ORDERED, that subject to the terms of the Plan, a Discharge under 11 U.S.C. § 1141(d) shall be granted to the Debtor, American Limousine LLC, subject to the occurrence of the Effective Date.

A copy of the confirmed plan is attached.

UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| In re: <br><br> American Limousine LLC, <br><br> Debtor. | Case No. 21- 10121 <br><br> Hon. Stacey L. Meisel <br><br> Chapter 11 (Subchapter V Small Business) |

## FIRST MODIFIED SMALL BUSINESS DEBTOR'S
## PLAN OF REORGANIZATION

This First Modified Plan of Reorganization is presented to you to inform you of the proposed Plan for restructuring the debt of American Limousine LLC, and to seek your vote to accept the Plan.

You are encouraged to carefully review the full text of this document, including all exhibits and attachments, before deciding how to vote on the Plan. To assist you in your review, please note that a list of definitions and a section of frequently asked questions appear at the end of this document.

**IN ADDITION TO CASTING YOUR VOTE TO ACCEPT OR REJECT THE PLAN, YOU MAY OBJECT TO CONFIRMATION OF THE PLAN. IF YOU WISH TO OBJECT TO CONFIRMATION OF THE PLAN, YOU MUST DO SO BY <u>AUGUST 17, 2021</u>.**
**YOUR BALLOT STATING HOW YOU ARE VOTING ON THE PLAN MUST BE RETURNED BY <u>AUGUST 17, 2021</u>. THE BALLOT MUST BE MAILED TO THE FOLLOWING ADDRESS:**     **Dean G. Sutton, Esq.**
                                      **Attorney for the Debtor**
                                      **18 Green Road**
                                      **Sparta, NJ 07871**
                                      **dean@deansuttonlaw.com**

**A HEARING ON THE CONFIRMATION OF THE PLAN IS SCHEDULED FOR <u>AUGUST 24, 2021 @ 11:00 am</u> IN COURTROOM NO.3A AT THE UNITED STATES BANKRUPTCY COURT, 50 WALNUT STREET, NEWARK, NJ 07102.** Your rights may be affected by this Plan. You should consider discussing this document with an attorney.

July 29, 2021

                            /s/Dean G. Sutton
                            Dean G. Sutton, Esq.,
                            Attorney for the Debtor
                            18 Green Road
                            Sparta, NJ 07871
                            (973)729-8121
                            dean@deansuttonlaw.com

# TABLE OF CONTENTS

SUMMARY OF THE PLAN AND DISTRIBUTIONS TO CREDITORS...........4

I.   HISTORY OF THE BUSINESS OPERATIONS OF THE DEBTOR.................5
     1.1.   Nature of the Debtor's Busines..................................................5
     1.2.   History of Business Operations of the Debtor.........................5
     1.3.   Filing of the Debtor's Chapter 11 Case...................................5
     1.4.   Legal Structure and Ownership.................................................5
     1.5    Debtor's Assets...........................................................................5
     1.6    Debtor's Liabilities.....................................................................5
     1.7    Current and Historical Financial Conditions..........................5
     1.8    Events Leading to the Filing of the Bankruptcy Case............5
     1.9    Significant Events During the Bankruptcy Case.....................6
     1.10.  Projected Recovery of Avoidable Transfers............................6

2.   THE PLAN.................................................................................................7
     2.1.   Unclassified Claims....................................................................7
            A.    Administrative Expenses...................................................7
            B.    Priority Tax Claims..........................................................10
     2.2.   Classes of Claims and Equity Interests..................................10
            A.    Classes of Secured Claims..............................................10
            B.    Classes of Priority Unsecured Claims............................23
            C.    Classes of General Unsecured Claims............................24
            D.    Classes of Equity Interest Holders.................................25
     2.3.   Estimated Number and Amount of Claims Objections...........26
     2.4    Treatment of Payroll Protection Plain Claim………………26
     2.5.   Treatment of Executory Contracts and Unexpired leases.......27
     2.6.   Means for Implementation of the Plan...................................29
     2.7.   Payments....................................................................................30
     2.8.   Post-Confirmation Management and Financial Reporting......30
     2.9.   Tax Consequences of the Plan.................................................30
     2.10.  Projections in Support of Debtor's Ability to Make Payments
            Under the Proposed Plan.........................................................30

3.   FEASIBILITY OF PLAN.......................................................................31
     3.1.   Ability to Initially Fund Plan.................................................31
     3.2.   Ability to Make Future Plan Payments and Operate without
            Further Reorganization...........................................................31

4.   LIQUIDATION ANALYSIS...................................................................32

5.   DISCHARGE...........................................................................................33
     5.1.   Discharge....................................................................................33

6.    GENRAL PROVISIONS.................................................................................34
    6.1.    Titles to Assets........................................................................34
    6.2.    Binding Effect.........................................................................34
    6.3.    Severability...........................................................................34
    6.4.    Retention of Jurisdiction by the Bankruptcy Court...........................34
    6.5.    Captions...............................................................................35
    6.6.    Modification of Plan................................................................35
    6.7.    Final Decree..........................................................................35

7.    ATTACHMENTS....................................................................................36

8.    FREQUENTLY ASKED QUESTIONS..........................................................37

9.    DEFINITIONS.......................................................................................39

## SUMMARY OF THE PLAN AND DISTRIBUTIONS TO CREDITORS

The Plan provides that the claim of secured creditor, M&T Bank will be paid in full. The payment will consist of monthly payments over 3½ years. The payments will be stepped up over that time and the debt will be fully amortized over 3 ½ years. The interest rate on this payment will be a variable rate set at prime plus 2%, with a floor of 5.25% and a ceiling of 6.75%. The initial interest rate at the commencement of payments will be 5.25%. M&T will also have an allowed general unsecured claim for all post-petition counsel fees incurred by M&T Bank to the extent not paid pursuant to the Final Order Authorizing use of Cash Collateral (Docket No. 80).

Secured creditor, Midland States Bank will be paid in full over a 5 year period with interest at 5.25% per annum.

Secured creditor, First Lease, Inc. will be paid in full over a 3 year period with interest at 3.75% per annum.

Secured creditor, Lancer Insurance Co. will be paid in full in accordance with Exhibit O.

Former landlord, Mahwah Property Owner, LLC, shall have an administrative claim in the amount of $60,000.00 and a secured claim of $48,888.96 which will be satisfied by the surrender of the security deposit. Mahwah also has an allowed general unsecured claim of $616,612.57.

The remaining secured claims will be satisfied in full by virtue of the surrender of their collateral.

The general unsecured creditors will receive quarterly payments. These creditors will be paid the Debtor's entire disposable income on a pro rata basis commencing after allowed Administrative creditors, fees and expenses have been paid in full. The Debtor projects that the general unsecured creditors will receive a 100% dividend.

Administrative creditors will receive monthly payments from the Debtor's disposable income on a pro rata basis commencing on the Effective Date.

The duration of the Plan will be 42 months.

The equity interest holders will not receive any distributions until the claims of M&T Bank are satisfied and the Plan is completed.

4

## ARTICLE 1

### HISTORY OF THE BUSINESS OPERATIONS OF THE DEBTOR

**1.1.    Nature of the Debtor's Business.**

See Exhibit A

**1.2.    History of Business Operations of the Debtor.**

See Exhibit A

**1.3    Filing of the Debtor's Chapter 11 Case.**

On January 8, 2021, the Debtor filed a voluntary petition for relief under the Bankruptcy Code. The Chapter 11 Subchapter V case is pending in the Bankruptcy Court in Newark, New Jersey.

**1.4.    Legal Structure and Ownership.**

The Debtor is an LLC. It is owned 100% by AL Parent Inc.

**1.5.    Debtor's Assets.**

The identity and fair market value of the estate's assets are detailed in Exhibit B. The source and basis for valuation are the Debtor's business records involving bank account statements and records of accounts receivable.

**1.6.    Debtor's Liabilities.**

See Exhibit C, D, E, & F.

**1.7.    Current and Historical Financial Conditions.**

The most relevant portions of the five monthly operating reports filed thus far are attached hereto. See Exhibits G, H I, J & K.

**1.8.    Events Leading to the Filing of the Bankruptcy Case.**

See Exhibit L.

**1.9.**   **Significant Events During the Bankruptcy Case.**

See Exhibit M.

**1.10.**   **Projected Recovery of Avoidable Transfers.**

The Debtor has not yet completed its investigation with regard to prepetition transactions. The Debtor anticipates completing its investigation within 60 days after the Effective Date. If you received a payment or other transfer of property within 90 days of bankruptcy, the Debtor may seek to avoid such transfer.

6

## ARTICLE 2

## THE PLAN

The Debtor's Plan must describe how its Creditors will be paid. Certain Claims are entitled to specific treatment under the Bankruptcy Code and are not placed in a class for purpose of payment. For example, Administrative Expenses and Priority Tax Claims are not classified.

As required by the Code, the Plan places Claims and Equity Interests in various classes and describes the treatment each class will receive. The Plan also states whether each class of Claims or Equity Interests is impaired or unimpaired. A Claim or Equity Interest can be impaired if the Plan alters the legal, equitable or contractual rights to which the Claimants are otherwise entitled. If the Plan is confirmed, each Creditor's recovery is limited to the amount provided in the Plan.

Only Creditors in classes that are impaired may vote on whether to accept or reject the Plan, and only Creditors holding Allowed Claims may vote. A class accepts the Plan when more than one-half (1/2) in number and at least two-thirds (2/3) in dollar amount of the Allowed Claims that actually vote, vote in favor of the Plan. Also, a class of Equity Interest holders accepts the Plan when at least two-thirds (2/3) in amount of the allowed Equity Interest holders that actually vote, vote in favor of the Plan. A class that is not impaired is deemed to accept the Plan.

### 2.1.   Unclassified Claims.

Certain types of Claims are automatically entitled to specific treatment under the Code. For example, Administrative Expenses and Priority Tax Claims are not classified. They are not considered impaired, and holders of such Claims do not vote on the Plan. They may, however, object if, in their view, their treatment under the Plan does not comply with that required by the Code. As such, the Plan does not place the following Claims in any class:

      A.     Administrative Expenses

The Debtor must pay all Administrative Expenses in full. If an Administrative Expense is disputed, the Bankruptcy Court must determine the validity and amount of the Administrative Expense, or in other words, "allow" the Administrative Expense. Any Administrative Expense that is undisputed and is due and owing on the Confirmation Date must be paid in accordance with this Plan, or upon such other terms as agreed upon by the Debtor and the Administrative Claimant or court order. If the Administrative Expense is disputed, payment will be made after the Administrative Expense is allowed by the Bankruptcy Court.

There are several types of Administrative Expenses, including the following:

      1.    If the Debtor trades in the ordinary course of business following its filing of the Chapter 11 Case, Creditors are entitled to be paid in full for the goods or services provided. This ordinary trade debt incurred by the Debtor after the Petition Date will be paid on an ongoing basis in accordance with the ordinary

business practices and terms between the Debtor and its trade Creditors.

2. If the Debtor received goods it has purchased in the ordinary course of business within 20 days before the Petition Date, the value of the goods received is an Administrative Expense.

3. Administrative Expenses also include any post-petition fees and expenses allowed to professionals, including the allowed claim of the Trustee for fees and/or reimbursements, and for attorneys and accountants employed upon Bankruptcy Court authority to render services to the Debtor during the course of the Chapter 11 cases. These fees and expenses must be noticed to Creditors and approved by the Bankruptcy Court prior to payment.

The following chart lists the Debtor's estimated Administrative Expenses, and their proposed treatment under the Plan:

| Type | Estimated Amount Owed | Proposed Treatment |
|---|---|---|
| Expenses arising in the ordinary course of business after the Petition Date | None | Payment through the Plan as follows: |
| Administrative Tax Claim | None | Payment through the Plan as follows: |
| The value of goods received in the ordinary course of business within 20 days before the Petition Date | None | Payment through the Plan as follows: |

| | | |
|---|---|---|
| Professional fees, as approved by the Bankruptcy Court<br><br>Dean G. Sutton, Esq. Debtor's Attorney | $80,000.00 (Est.) | After Bankruptcy Court approval, Payment through the Plan as follows:<br><br>The Debtor shall pay all of its post-petition disposable income for 36 months commencing on the Effective Date. Approved Administrative Fees and Expenses shall be paid in full pro rata from Plan Payments before payments to general unsecured creditors are commenced. |
| Clerk's Office fees | If Any | Paid in full on the Effective Date. |
| Other Administrative Expenses<br><br>Mahwah Property Owner, LLC | $60,000.00 | Payment through the Plan as follows:<br>Pursuant to Order dated June 8, 2021, this claim is to be paid through the Plan in the same priority and time as other administrative expense Claims. See Exhibit N. |
| Trustee-<br><br>Devanshu L. Modi | $10,000.00 (Est.) | Upon application under § 330 and after Bankruptcy Court approval, payment through the Plan as follows:<br><br>The Debtor shall pay all of its post-petition disposable income for 36 months commencing on the Effective Date. Approved Administrative Fees and Expenses shall be paid in full pro rata from Plan Payments before payments to general unsecured creditors are commenced. |
| TOTAL | $130,000.00 (Est.) | |

9

B.    Priority Tax Claims.

Priority Tax Claims are unsecured income, employment, and other taxes described by § 507(a)(8) of the Code. Unless the holder of such a § 507(a)(8) Priority Tax Claim agrees otherwise, it must receive the present value of such Claim, in regular installments paid over a period not exceeding 5 years from the order of relief. Each holder of a Priority Tax Claim will be paid as set forth in the chart below:

| Name of Taxing Authority and Type of Tax | Estimated Amount Owed | Date of Assessment | Treatment |
|---|---|---|---|
| Dept. of the Treasury Internal Revenue Service | $124.00 | Estimated for pension for 12/31/19 | Full Amount to be Paid upon Confirmation |
| Commonwealth of PA UCTS | $341.40 | 01/2021 | Full Amount to be Paid upon Confirmation |
| State of New Jersey Dept. of Labor Div. of Employer Accts. | $636.36 | Unknown | Full Amount to be Paid upon Confirmation |

### 2.2    Classes of Claims and Equity Interests.

The following are the classes set forth in the Plan, and the proposed treatment that they will receive under the Plan:

A.    Classes of Secured Claims

Allowed Secured Claims are Claims secured by property of the Debtor's bankruptcy estate (or that are subject to setoff) to the extent allowed as secured Claims under § 506 of the Code.  If the value of the collateral or setoffs securing the Creditor's Claim is less than the amount of the Creditor's Allowed Claim, the deficiency will be classified as a general unsecured Claim. In addition, certain claims secured only by the debtor's principal residence, may require different treatment pursuant to § 1190(3) of the Code as set forth below, if applicable.

The following chart lists all classes containing the Debtor's secured prepetition Claims and their proposed treatment under the Plan:

10

| Class # | Description | Insider (Yes/No) | Impairment | Treatment |
|---|---|---|---|---|
| 1 | *Secured claim of*: Name = **M&T Bank**<br><br>Collateral description =<br><br>**Continuing security interest in substantially all of Debtor's assets including but not limited to cash in bank accounts and accounts receivable.**<br><br>Allowed Secured Amount = $2,130,197.05<br><br>Priority of lien = 1st<br><br>Principal owed = $2,130,197.05<br><br>Pre-pet. arrearage = $0<br><br>Total claim= $2,130,197.05 | **No** | [State whether impaired or unimpaired]<br><br>**Impaired** | Debtor to pay the full amount of the allowed secured claim in full over time as follows:<br><br>Monthly Pmt.= **$14,319.61** [1]<br><br>Pmts Begin   = **September 1, 2021**<br><br>Pmts End   = **March 1, 2025**<br><br>Balloon Pmt = **n/a**<br><br>Interest rate % = **5.25** [2]<br><br>Treatment of Lien = **Lien will remain on property until claim is satisfied at which time the lien is extinguished.**<br><br>[1] **Payments will be stepped up pursuant to the payment schedule set forth on Exhibit U.**<br><br>[2] **The interest rate will be variable set at prime plus 2% with a floor of 5.25% and ceiling of 6.75%. The initial interest rate at the commencement of paying will be 5.25%.**<br><br>The Claims of the insiders are general unsecured claims and will be paid on a pro-rata basis along with the class 13 allowed claims.<br><br>Pursuant to the Subordination Agreement with M&T Bank, (Exhibit Q), all payments to which the insiders would be entitled to receive will be paid to M&T Bank until such time as M&T's secured claim is satisfied in full.<br><br>Loan Documents - Except as expressly set forth in the Plan and the Confirmation Order, M&T's secured claim against the Debtor shall be governed by the parties' pre-petition Loan Documents (as that term is defined in that certain Second Amended and Restated Loan and Security Agreement (the "Loan Agreement") dated as of February 19, 2020, by and among M&T Bank, American Limousine LLC, and the Other Borrowers Signatory Thereto), provided, however, that the Debtor shall not be required to comply with Section 7.7 of the Loan Agreement.  In the event of a default under the Plan or the Loan Documents, M&T Bank shall be entitled to exercise all rights and remedies under the Loan Documents, the Uniform Commercial Code, and applicable law.  The rights and remedies available to M&T Bank, unless specifically modified under the Plan, shall remain in full force and effect.  Notwithstanding anything in the Plan or the Confirmation Order to the contrary, nothing contained in the Plan or the |

| Class # 1 Cont. | | | | Confirmation Order shall affect M&T Bank's rights and remedies against any third parties, including any other Borrowers under the Loan Documents.<br><br>Letter of Credit - M&T Bank issued an irrevocable standby letter of credit (the "Letter of Credit") dated December 30, 2016 in favor of The Port Authority of New York & New Jersey not to exceed the amount of $50,000.00, pursuant to that certain Standby Letter of Credit Agreement, entered into as of October 26, 2016 (the "Letter of Credit Agreement"). The Debtor's reimbursement obligations under the Letter of Credit Agreement are fully secured by cash collateral held in a segregated account at M&T Bank. To date, there have been no drawdowns under the Letter of Credit. The Letter of Credit and the Letter of Credit Agreement shall be assumed by the Debtor pursuant 11 U.S.C. § 365 to the extent applicable, and the Debtor's obligations under the Letter of Credit Agreement, including, without limitation, all reimbursement obligations, and M&T Bank's security interest in all collateral securing the Debtor's reimbursement obligations under the Letter of Credit Agreement shall pass through the bankruptcy and remain unimpaired. The rights and remedies available to M&T Bank under the Letter of Credit Agreement and the Letter of Credit, including the right to apply any cash collateral to the Debtor's reimbursement obligations after any drawdown under the Letter of Credit, shall remain in full force and effect. |
| --- | --- | --- | --- | --- |

12

| 2 | *Secured claim of:*<br>Name =<br>**Cummings Properties, LLC**<br><br>Collateral description =<br>**Security Deposit**<br><br>Collateral Value =<br>**$30,268.00**<br><br>Priority of lien = **1st**<br><br>Total claim =<br>**$100,295.25** | **No** | [State whether impaired or unimpaired]<br><br>**Secured Claim is Unimpaired** | Secured Claim shall be Satisfied by surrender of Collateral<br><br><br>Deficiency in the amount of $70,027.00 to be classified and treated as a general unsecured Claim |

| Class # | Description | Insider (Yes or No) | Impairment | Treatment |
|---|---|---|---|---|
| 3 | *Secured claim of*:<br>Name =<br>**Lancer Insurance Company**<br><br>Collateral description =<br>**"Security Fund" under Deductible Security Agreement**<br><br>Collateral Value =<br>**$457,029.09**<br><br>Priority of lien = **1st**<br><br>Total claim =<br>**$457,029.09** | **No** | [State whether impaired or unimpaired]<br><br>**Impaired** | Secured Claim shall be Satisfied in accordance with the Agreement between the Debtor and the Creditor which was approved by the Court on June 22, 2021. See Exhibit O. |

14

| 4 | *Secured claim of*:<br>Name =<br>**First Lease, Inc.**<br>**as assignee of**<br>**Empire Financial**<br>**Funding, Inc.**<br><br>Collateral description =<br>**Model 626-EZ 24V**<br>**Bus Wash Machine,**<br>**SN 11457-900/3**<br><br>Collateral Value =<br>**$17,000.00**<br><br>Priority of lien = **1st**<br><br>Principal owed =<br>**$4,276.74**<br><br>Pre-Petition arrearage =<br>**$4,276.74**<br><br>Total claim =<br>**$4,276.74** | **No** | [State whether impaired or unimpaired]<br><br>**Impaired** | Debtor to pay the full amount of the allowed secured claim in full over time as follows:<br><br>Monthly Pmt.= **$125.79**<br><br>Pmts Begin   =<br>**September 15, 2021**<br><br>Pmts End      =<br>**36 Months**<br><br>Interest rate % =<br>**3.75%**<br><br>Treatment of Lien =<br>**Lien will remain on property until claim is satisfied at which time the lien is extinguished.** |

15

| 5 | *Secured claim of*:<br>Name =<br>**Lease Direct**<br><br>Collateral description =<br><br>**2x speedy Wash Battery Powered Mobile Bus Wash**<br><br>Collateral Value =<br>**$3,000.00**<br><br>Priority of lien = **1**st<br><br>Principal owed =<br>**$1,888.40**<br><br>Total claim =<br>**$1,888.40** | **No** | [State whether impaired or unimpaired]<br><br>**Unimpaired** | Entire Claim shall be satisfied by Surrender of the Collateral. |

| | Description | (Yes or No) | [State whether impaired or unimpaired] | Treatment Desc |
|---|---|---|---|---|
| 6 | *Secured claim of*:<br>Name =<br>**Lease Direct**<br><br>Collateral description =<br><br>**Mohawk Model TR-25000 lb. Drive On Lift & Mohawk RJ 15,000 lb. Rolling Bridge Jack for TR-25 Lift**<br><br>Collateral Value =<br>**$7,000.00**<br><br>Priority of lien = **1st**<br><br>Principal owed =<br>**$4,500.00**<br><br>Total claim =<br>**$4,500.00** | **No** | **Unimpaired** | Entire Claim has been satisfied by Payment. |

17

| | | (Yes or No) | [State whether impaired or unimpaired] | |
|---|---|---|---|---|
| 7 | *Secured claim of:*<br>Name =<br>**Ascentium Capital LLC**<br><br>Collateral description =<br>**IT Equipment**<br><br>Collateral Value =<br>**$35,000.00**<br><br>Priority of lien = **1st**<br><br>Principal owed =<br>**$33,938.81**<br><br>Total claim =<br>**$33,938.81** | No | Unimpaired | Entire Claim shall be satisfied by Surrender of the Collateral. |

18

| | Description | Consider (Yes or No) | Impairment | Treatment Desc |
|---|---|---|---|---|
| 8 | *Secured claim of:*<br>Name =<br>**Ascentium Capital LLC**<br><br>Collateral description =<br>**GPS System**<br>**250 Cameras**<br><br>Collateral Value =<br>**$37,500.00**<br><br>Priority of lien = **1st**<br><br>Principal owed =<br>**$42,002.56**<br><br>Total claim =<br>**$42,002.56** | **No** | [State whether impaired or unimpaired]<br><br>**Unimpaired** | Entire Claim shall be satisfied by Surrender of the Collateral. |

| Class # | Description | Considered (Yes or No) | Impaired Treatment | Treatment Desc |
|---|---|---|---|---|
| 9 | *Secured claim of*:<br>Name =<br>**Ascentium Capital LLC**<br><br>Collateral description =<br>**GPS System**<br>**350 Cameras**<br><br>Collateral Value =<br>**$52,500.00**<br><br>Priority of lien = **1st**<br><br>Principal owed =<br>**$63,317.21**<br><br>Total claim =<br>**$63,317.21** | **No** | [State whether impaired or unimpaired]<br><br>**Unimpaired** | Entire Claim shall be satisfied by Surrender of the Collateral. |

20

| 10 | Secured claim of:<br>Name =<br>**T-Mobile**<br><br>Collateral description =<br>**Mobile Phones & Tablets**<br><br>Value of Collateral:<br>**$17,670.00**<br><br>Allowed Secured Amount:<br>**$15,465.35**<br><br>Priority of lien = 1st<br><br>Principal owed =<br>**$15,465.35**<br><br>Total claim =<br>**$15,465.35** | **No** | [State whether impaired or unimpaired]<br><br>**Unimpaired** | Entire Claim has been satisfied by surrender of collateral. |

21

| | Description | (Yes or No) | Impaired or unimpaired | Treatment Desc |
|---|---|---|---|---|
| 11 | *Secured claim of*:<br>Name =<br>**Midland States Bank**<br><br>Collateral description =<br>**4 Grech Motors**<br>**GM33 Shuttle Buses**<br><br>Allowed Secured Amount:<br>**$254,360.80**<br><br>Value of Collateral<br>**$400,000.00**<br><br>Priority of lien = **1st**<br><br>Principal owed =<br>**$254,360.80**<br><br>Pre-petition arrearage =<br>**$0**<br><br>Post-petition interest and counsel fees =<br>**$13,153.00**<br><br>Total claim =<br>**$267,513.80** | **No** | [State whether impaired or unimpaired]<br><br>**Impaired** | Debtor to pay the full amount of the allowed secured claim in full over time as follows:<br><br>Monthly Pmt.= **$5,079.01**<br><br>Pmts Begin   =<br>**Effective Date**<br><br>Pmts End   =<br>**60 Months**<br><br>Interest rate % = **5.25%**<br><br>Treatment of Lien =<br>**Lien will remain on property until claim is satisfied at which time the lien is extinguished.**<br><br>Notwithstanding any other provisions in this Plan, Midland States Bank shall be provided for as set forth in the Stipulation between Debtor and Midland States Bank on Chapter 11 Plan filed on May 17, 2021 (Docket No. 177) which is attached hereto and incorporated herein as Exhibit P. |

22

| Class # | Description (Creditor Name/Address/Acct No) | Impairment | Treatment Desc | |
|---|---|---|---|---|
| 12 | *Secured claim of*:<br>Name =<br>**Mahwah Property Owner, LLC**<br><br>Collateral description =<br>**Security Deposit**<br><br>Allowed Secured Amount:<br>**$48,888.96**<br><br>Priority of lien = **1**ˢᵗ<br><br>Total claim =<br>**$48,888.96** | **No** | **Unimpaired** | The secured claim shall be satisfied through the Debtor surrendering the Security Deposit to Mahwah upon the Court's entry of an Order Confirming the Plan. |

**B. Classes of Priority Unsecured Claims.**

   Certain priority Claims that are referred to in §§ 507(a)(1), (4), (5), (6), and (7) of the Code are required to be placed in classes. The Code requires that each holder of such a Claim receive cash on the Effective Date of the Plan equal to the allowed amount of such Claim. However, a class of holders of such Claims may vote to accept different treatment.

   The following chart lists all classes containing Claims under §§ 507(a)(1), (4), (5), (6), and (a)(7) of the Code and their proposed treatment under the Plan:

| Class # | Description | Impairment | Treatment |
|---|---|---|---|
| | Priority unsecured claim pursuant to Section [insert]<br>Total amt of claims =<br>$ | [State whether impaired or unimpaired] | |
| | Priority unsecured claim pursuant to Section [insert]<br>Total amt of claims =<br>$ | [State whether impaired or unimpaired] | |

---

[1] This claim is being treated in accordance with the Consent Order Entered on June 8, 2021. (Exhibit N). This Order is incorporated in this Plan and to the extent that it is inconsistent with the terms of the Plan, the Order will govern.

## C. Class[es]of General Unsecured Claims

General unsecured Claims are not secured by property of the estate and are not entitled to priority under § 507(a) of the Code. [Insert description of §1122(b) convenience class if applicable.]

The following chart identifies the Plan's proposed treatment of Classes 14 - 16, which contain general unsecured Claims against the Debtor:

| Class # | Description | Insider | Impairment | Treatment |
|---|---|---|---|---|
| 13 | **General Unsecured Class** [including any claims set forth in Section 2.2.A, above] | N | Impaired | Commencing on the 1st Day of the Third Month after all Administrative Claims have been satisfied, the Debtor will pay all of its accumulated post-petition disposable income. These payments will continue on a quarterly basis on the first day of every third month. The payments will be paid to allowed general unsecured claims on a pro-rata basis. Payments will terminate on the 42nd month after the effective date. |
| 14 | **Unsecured Tort Claims Class** | N | Impaired | The Debtor has insurance covering these claims. The Claimants recovery is limited to the amount they receive from that insurance coverage. No further payments will be made by the Debtor.<br><br>The Debtor agrees to vacate the automatic stay to permit these claimants to pursue their recovery from the Debtor's insurance coverage. |
| 15 | **Unsecured Claims of:** <br><br>**Michael Fogarty and Errands Plus, Inc.** | Y | Impaired | The Claims of the insiders are general unsecured claims and will be paid on a pro-rata basis along with the class 13 allowed claims.<br><br>Pursuant to the Subordination Agreement with M&T Bank, (Exhibit Q), all payments to which the insiders would be entitled to receive will be paid to M&T Bank until such time as M&T's secured claim is satisfied in full. |

D. Class[es] of Equity Interest Holders.

Equity Interest holders are parties who hold an ownership interest (*i.e.*, equity interest) in the Debtor. In a corporation, entities holding preferred or common stock are Equity Interest holders. In a partnership, Equity Interest holders include both general and limited partners. In a limited liability company ("LLC"), the Equity Interest holders are the members. Finally, with respect to an individual who is a debtor, the Debtor is the Equity Interest holder.

The following chart sets forth the Plan's proposed treatment of the class[es] of Equity Interest holders: [There may be more than one class of Equity Interest holders in, for example, a partnership case, or a case where the prepetition debtor had issued multiple classes of stock.]

| Class # | Description | Impairment | Treatment |
|---------|-------------|------------|-----------|
| 16 | Equity Interest holders | **Unimpaired** | Equity Interest Holders will retain all assets.<br><br>However, there will be no distributions to equity interest holders until the claims of M&T Bank are satisfied and the Plan is completed. |

### 2.3. Estimated Number and Amount of Claims Objections.

The Debtor may object to the amount or validity of any Claim within 60 days of the Confirmation Date by filing an objection with the Bankruptcy Court and serving a copy of the objection on the holder of the Claim. The Claim objected to will be treated as a Disputed Claim under the Plan. If and when a Disputed Claim is finally resolved by the allowance of the Claim in whole or in part, the Debtor will pay the Allowed Claim in accordance with the Plan. The Debtor has not completed its investigation with regard to claims objection. The Debtor expects to complete its investigation within 30 Days of the filing of this Plan.

### 2.4.    Treatment of Payroll Protection Plan Claim

The Debtor obtained a Payroll Protection Program ("PPP") loan in May 2020. The amount of the loan was $5,795,100; M&T Bank has filed a proof of claim for $5,835,111.01.

The Debtor believes that a substantial amount of the PPP loan will be forgiven. Under the PPP guidelines, of the amount that may be forgiven, at least 60% must be used for "payroll costs." Put another way, of the amount that is forgiven, at least 60% must be spent on "payroll costs," and the remaining 40% spent on non-payroll costs.

Payroll costs generally include the following: gross pay to employees (salary, wages commissions, and bonuses, subject to an annualized rate cap of $100,000); payment for vacation and other leave; payment for severance; and payment for the provision of employee benefits (group health, life and other insurance and retirement).

Non-payroll costs include rental payments for real and personal property; utilities; certain supplier costs; certain software and operational expenditures; and worker protection expenditures, such as personal protective equipment.

The Debtor has will apply for forgiveness of its PPP loan before Confirmation of this Plan.

The Debtor's preliminary review of the PPP forgiveness process indicates that the Debtor will seek forgiveness of approximately 65% of the loan amount. This was determined based on payroll costs of approximately $2,275,000, which includes the following categories: cash compensation, salary, and other wage payments; employer payments relating to health insurance and retirement plans; and severance payments. In addition, the Debtor paid non-payroll costs in excess of $1,517,100, which will be the balance of the amount for which forgiveness will be requested. These non-payroll costs include payments for rent, utilities, operations expenditures (such as software for business operations, human resources, accounting, and similar functions), supplier costs, and worker protection expenditures.

| | |
|---|---|
| Total PPP amount | $5,795,100 |
| Payroll costs | $2,275,000 |
| Non-payroll costs | $1,517,000 |
| Estimated total to be forgiven | $3,792,000 |
| Estimated amount not forgiven | $2,003,000[i] |

The Debtor expects that it will apply for forgiveness at the end of July, 2021.

The portion of the PPP loan that is not forgiven will be included in the total amount of general unsecured claims and receive a dividend pro rata, with other unsecured claims.

[i]Pre-Petition Interest in the amount of $40,010.01 will also be included in the amount to be paid in the Plan.

### 2.5.    Treatment of Executory Contracts and Unexpired Leases.

Executory Contracts are contracts where significant performance of the contract remains for both the Debtor and another party to the contract. The Debtor has the right to reject, assume (i.e. accept), or assume and assign these types of contracts to another party, subject to the Bankruptcy Court's approval. The paragraphs below explain the Debtor's intentions regarding its Executory Contracts (which includes its unexpired leases) and the impact such intentions would have on the other parties to the contracts.

Check all that apply:

[ ] Assumption of Executory Contracts.

The Executory Contracts shown on Exhibit _____ shall be assumed by the Debtor. Assumption means that the Debtor has elected to continue to perform the obligations under such contracts and unexpired leases, and to cure defaults of the type that must be cured under the Bankruptcy Code, if any. Exhibit _____ also lists how the Debtor will cure and compensate the other party to such contract or lease for any such defaults.

If you object to the assumption of your unexpired lease or executory contract, the proposed cure of any defaults, or the adequacy of assurance of future performance, you must file and serve your objection to the assumption within the deadline for objecting to the confirmation of the Plan, unless the Bankruptcy Court has set an earlier time.

OR

27

[ ] Assumption and Assignment of Executory Contracts and Unexpired Leases.

The Executory Contracts shown on Exhibit_____shall be assumed by the Debtor and assigned to the party listed in that Exhibit. Assumption and assignment by the Debtor means that the Debtor will undertake the obligations under such contracts and unexpired leases, will cure defaults of the type that must be cured under the Bankruptcy Code, if any, and will assign the contract to the party listed.

If you object to the assumption and assignment of your unexpired lease or executory contract, the proposed cure of any defaults, or the adequacy of assurance of future performance, you must file and serve your objection to the assumption and assignment within the deadline for objecting to the confirmation of the Plan, unless the Bankruptcy Court has set an earlier time.

OR

[X] Rejection of Executory Contracts and Unexpired Leases.

On the first day of the case, the Debtor filed Motions to reject certain leases, all of these Motions were granted. They included a) TGI office Automation, which leased 2 printers, 2 photocopiers and papercut software to the Debtor; b) Non-Residential real estate leased to the Debtor by Mahwah Property Owner LLC, located at 90 McKee Drive, Mahwah, NJ, and by Cummings Properties, LLC located at 100 Cummings Center, Woburn, MA; and c) Numerous vehicles (approximately 150) which were leased to the Debtor by Merchants Fleet Management ("Merchants").

Further, the Debtor will be conclusively deemed to have rejected all executory contracts and/or unexpired leases not expressly previously rejected, or not assumed before the date of the order confirming the Plan.

Rejection means that the Debtor has elected not to continue to perform the obligations under such contracts or leases. If the Debtor has elected to reject a contract or lease, the other party to the contract or lease will be treated as an unsecured Creditor holding a Claim that arose before the bankruptcy was filed.

**[The Deadline for Filing a Proof of Claim Based on a Claim Arising from the Rejection of an Executory Contract Is April 19, 2021.** Any Claim based on the rejection of an Executory Contract will be barred if the proof of claim is not timely filed, unless the Bankruptcy Court orders otherwise.]

## Post-Petition Leases.

The Debtor has agreed to enter into two post-petition non-residential real estate lease agreements. Those lease agreements were approved by the Court on March 31, 2021. (Exhibits R and S.) One of the leases will allow the Debtor to occupy office space in Beverly, Massachusetts. The landlord there is Cummings Properties. The other lease will allow the

28

Debtor to occupy space in Woodland Park, New Jersey. The landlord there is 365 Tower Bridge Development, LLC.

Those office locations will support the Debtor's operations in New England and the Middle Atlantic area.

Additionally, the Debtor has negotiated an agreement to retain 68 vehicles which it had previously leased from Merchants. The parties agreed to modify the terms of their lease agreement to allow the Debtor to defer all lease payments through May 31, 2021 and pay interest only from June through August, 2021. That agreement was approved by the Court on May 12, 2021. (Exhibit T).

The leases referred to in this section of the Plan are assumed.

### 2.6.    Means for Implementation of the Plan.

On Confirmation of the Plan, all property of the Debtor, tangible and intangible, including, without limitation, licenses, furniture, fixtures and equipment, will revert, free and clear of all Claims and Equitable Interests except as provided in the Plan, to the Debtor. The Debtor expects to have sufficient cash on hand to make the payments required on the Effective Date.

The Plan will be funded by the Debtor's income from its business operations.

### 2.7.    Payments.

In accordance with the Subchapter V Trustee's agreement, all payments to Creditors provided for in the Plan will be made by the Debtor.

### 2.8.    Post-Confirmation Management and Financial Reporting.

The Post-Confirmation Officers/Managers of the Debtor, and their compensation, shall be as follows:

| Name | Position | Compensation |
|---|---|---|
| Michael Fogarty | President | $200,000.00 [1]plus family health insurance and 1% match on 401K contributions. |
| Craig Lynam | Chief Operating Officer | $137,500.00 [1]plus family health insurance and 1% match on 401K contributions. |

[1]This amount represents a temporary 50% reduction from the prior compensation. It is anticipated that the compensation will return to normal when business operations can support it. See Exhibit U for the projected increase.

The Debtor will continue to file financial reports in a form similar to Official Bankruptcy Form 425C, but modified to provide post-confirmation information pertaining to the Debtor's cash flow and operations.

Those reports will be filed on a monthly basis until the Administrative Claims are satisfied and on a quarterly basis thereafter.

### 2.9.    Tax Consequences of the Plan.

*Creditors and Equity Interest Holders Concerned with How the Plan May Affect Their Tax Liability Should Consult with Their Own Accountants, Attorneys, And/Or Advisors.*

The Debtor does not anticipate that there will be any tax consequences to the Debtor of the Plan.

### 2.10. Projections in Support of Debtor's Ability to Make Payments Under the Proposed Plan

Debtor has provided projected financial information. Those projections are listed in Exhibit U.

## ARTICLE 3
## FEASIBILITY OF PLAN

The Bankruptcy Court must find that confirmation of the Plan is not likely to be followed by the liquidation, or the need for further financial reorganization, of the Debtor or any successor to the Debtor, unless such liquidation or reorganization is proposed in the Plan.

### 3.1.    Ability to Initially Fund Plan.

The Debtor believes that the Debtor will have enough cash on hand on the Effective Date of the Plan to pay all the Claims and expenses that are entitled to be paid on that date. Tables showing the amount of cash on hand on the Effective Date of the Plan, and the sources of that cash, are attached hereto as Exhibit I.

### 3.2.    Ability to Make Future Plan Payments And Operate Without Further Reorganization.

The Debtor must submit all or such portion of the future earnings or other future income of the Debtor to the supervision and control of the Trustee or make payments directly to creditors as is necessary for the execution of the Plan.

The Debtor has provided projected financial information. Those projections are listed in Exhibit U (referenced in § 2.10, above).

The Debtor's financial projections show that the Debtor will have an aggregate total cash flow during the Plan, after paying operating expenses and post-confirmation taxes, of $13,439,856,00. The final Plan payment is expected to be paid on the 42nd month after the Effective Date.

[Summarize the numerical projections, and highlight any assumptions that are not in accord with past experience. Explain why such assumptions should now be made.]

**You Should Consult with Your Accountant or other Financial Advisor If You Have Any Questions Pertaining to These Projections.**

## ARTICLE 4
## LIQUIDATION ANALYSIS.

To confirm the Plan, the Bankruptcy Court must find that all Creditors and Equity Interest holders who do not accept the Plan will receive at least as much under the Plan as such Claimants and Equity Interest holders would receive in a Chapter 7 liquidation. A liquidation analysis is attached hereto as Exhibit B.

## ARTICLE 5
## DISCHARGE.

### 5.1.  [Option 1 -- If § 1141(d)(3) is not applicable]

Discharge. **If the Plan is confirmed under § 1191(a),** on the Confirmation Date of this Plan, the Debtor will be discharged from any debt that arose before confirmation of this Plan, subject to the occurrence of the Effective Date, to the extent specified in § 1141(d) of the Bankruptcy Code; or

**If the Plan is confirmed under § 1191(b),** as soon as practicable after completion by the Debtor of all payments due under the Plan, unless the court approves a written waiver of discharge executed by the Debtor after the order for relief under this chapter, the court shall grant the Debtor a discharge of all debts provided in section 1141(d)(1)(A) of this title, and all other debts allowed under section 503 of this title and provided for in this Plan, except any debt—

  (1) on which the last payment is due after the first 3 years of the plan, or such other time not to exceed 5 years fixed by the court; or

  (2) if applicable, of the kind specified in section 523(a) of this title.

### [Option 2– If § 1141(d)(3) is applicable]

No Discharge. In accordance with § 1141(d)(3) of the Bankruptcy Code, the Debtor will not receive any discharge of debt in this bankruptcy case.

NOTE: If the Debtor is not entitled to discharge under 11 U.S.C. § 1141(d)(3) change this heading to **"NO DISCHARGE OF DEBTOR."**

33

## ARTICLE 6
## GENERAL PROVISIONS.

### 6.1.    Title to Assets.

If a plan is confirmed under § 1191(a), except as otherwise provided in the Plan or in the order confirming the Plan, (i) confirmation of the Plan vests all of the property of the estate in the Debtor, and (ii) after confirmation of the Plan, the property dealt with by the Plan is free and clear of all Claims and Equity Interests of Creditors, equity security holders, and of general partners in the Debtor.

If a plan is confirmed under § 1191(b), property of the estate includes, in addition to the property specified in § 541, all property of the kind specified in that section that the Debtor acquires, as well as earnings from services performed by the Debtor, after the date of commencement of the case but before the case is closed, dismissed, or converted to a case under chapter 7, 12, or 13 of the Bankruptcy Code, whichever occurs first. Except as provided in § 1185 of the Bankruptcy Code, the Plan, or the order confirming the Plan, the Debtor shall remain in possession of all property of the estate.

### 6.2.    Binding Effect.

If the Plan is confirmed, the provisions of the Plan will bind the Debtor and all Creditors, whether or not they accept the Plan. The rights and obligations of any entity named or referred to in this Plan will be binding upon, and will inure to the benefit of the successors or assigns of such entity.

### 6.3.    Severability.

If any provision in this Plan is determined to be unenforceable, the determination will in no way limit or affect the enforceability and operative effect of any other provision of this Plan.

### 6.4.    Retention of Jurisdiction by the Bankruptcy Court.

The Bankruptcy Court shall retain jurisdiction of this case with regard to the following matters: (i) to make such orders as are necessary or appropriate to implement the provisions of this Plan and to resolve any disputes arising from implementation of the Plan; (ii) to rule on any modification of the Plan proposed under section 1193; (iii) to hear and allow all applications for compensation to professionals and other Administrative Expenses; (iv) to resolve all issues regarding Claims objections, and issues arising from the assumption/rejection of executory contracts or unexpired leases, and (v) to adjudicate any cause of action which may exist in favor of the Debtor, including preference and fraudulent transfer causes of action.

34

### 6.5. Captions.

The headings contained in this Plan are for convenience of reference only and do not affect the meaning or interpretation of this Plan.

### 6.6. Modification of Plan.

The Debtor may modify the Plan at any time before confirmation of the Plan pursuant to § 1193(a). However, the Bankruptcy Court may require additional items including revoting on the Plan.

If the Plan is confirmed under Section 1191(a), the Debtor may also seek to modify the Plan at any time after confirmation only if (1) the Plan has not been substantially consummated *and* (2) the Bankruptcy Court authorizes the proposed modifications after notice and a hearing.

If the Plan is confirmed under Section 1191(b), the Debtor may seek to modify the Plan at any time only if (1) it is within 3 years of the Confirmation Date, or such longer time not to exceed 5 years, as fixed by the court *and* (2) the Bankruptcy Court authorizes the proposed modifications after notice and a hearing.

### 6.7. Final Decree.

Once the estate has been fully administered, as provided in Rule 3022 of the Federal Rules of Bankruptcy Procedure, the Debtor, or such other party as the Bankruptcy Court shall designate in the Plan Confirmation Order, shall file a motion with the Bankruptcy Court to obtain a final decree to close the case. Alternatively, the Bankruptcy Court may enter such a final decree on its own motion.

[Insert other provisions, as applicable.]

## ARTICLE 7
## ATTACHMENTS

The following documents accompany the Plan [check those applicable, and list any other attachments here]:

The following documents accompany the Plan [check those applicable, and list any other attachments here]:

[X]  Nature of Debtor's Business, annexed as Exhibit A.
[X]  History of Business Operations, annexed as Exhibit A.
[X]  Debtor's Assets at Fair Market Value, annexed as Exhibit B.
[X]  Liquidation Analysis, annexed as Exhibit B.
[X]  Debtor's Liabilities, annexed as Exhibit C.
[X]  Total Estimated General Unsecured Claims To Be Paid In the Plan, annexed as Exhibit D.
[X]  Claims Register, annexed as Exhibit E.
[X]  Insider Claims, annexed as Exhibit F.
[X]  Debtor's most recent post-petition operating report filed since the commencement of the Debtor's bankruptcy case, annexed as Exhibits G.
[X]  Summary of the Debtor's periodic operating reports filed since the commencement of the Debtor's bankruptcy case, annexed as Exhibit H.
[X]  Tables showing the amount of cash on hand as of the Effective Date, and the sources of that cash, annexed as Exhibit I.
[X]  Exhibit J - None.
[X]  Exhibit K - None.
[X]  Events Leading to the Filing of the Bankruptcy case, annexed as Exhibit L.
[X]  Significant Events During Bankruptcy case, annexed as Exhibit M.
[X]  Consent Order Resolving Mahwah Property Owner, LLC's Motion, annexed as Exhibits N.
[X]  Lancer Insurance Co. Agreement and Order Approving Agreement, annexed as Exhibit O.
[X]  Stipulation Between Debtor & Midland States Bank, annexed as Exhibit P.
[X]  General Subordination Agreement with M&T Bank, annexed as Exhibit Q.
[X]  Lease - 100 Cummings Center, annexed as Exhibits R.
[X]  Order Approving 100 Cummings Center, annexed as Exhibit R.
[X]  Lease - 365 Executive Suites Lease, annexed as Exhibit S.
[X]  Order Approving 365 Executive Suites Lease, annexed as Exhibit S.
[X]  Order Modifying Order Rejecting Leases with Merchants, annexed as Exhibit T.
[X]  Projected Amortization Schedule of Payments for M&T Bank showing scheduled step up in monthly payments pursuant to agreement between the Debtor and M&T Bank, annexed as Exhibit U.
[X]  Financial forecast for the Debtor, annexed as Exhibit V.

## ARTICLE 8
## FREQUENTLY ASKED QUESTIONS

**What Is the DEBTOR Attempting to Do in Chapter 11?** Chapter 11 is the principal reorganization chapter of the Bankruptcy Code. Under Chapter 11, a debtor attempts to restructure the claims held against it. Formulation and confirmation of a plan of reorganization is the primary goal of Chapter 11. When reorganization is not feasible, however, a debtor may propose a liquidating plan under Chapter 11. The plan is the legal document which sets forth the manner and the means by which holders of claims against a debtor will be treated.

**Why Am I Receiving This Plan?** In order to confirm a plan of reorganization [or liquidation], the Bankruptcy Code requires that a debtor solicit acceptances of a proposed plan, which it is doing with this Plan. If the creditors are satisfied with the information provided in the Plan and the terms of the Plan as proposed, and have voted for the Plan and returned the requisite number of ballots to counsel for the Debtor, the Bankruptcy Court may confirm the Plan as proposed by the Debtor.

**How Do I Determine Which Class I Am In?** To determine the class of your claim or interest, you must first determine whether your claim is secured or unsecured. Your claim is secured if you have a validly perfected security interest in collateral owned by the Debtor. If you do not have any collateral, your claim is unsecured. The Table of Contents will direct you to the treatment provided to the class in which you are grouped. The pertinent section of the Plan dealing with that class will explain, among other things, who is in that class, what is the size of the class, what you will receive if the Plan is confirmed, and when you will receive what the Plan has provided for you if the Plan is confirmed. Article 2 lists all classes of claimants and their types of claims.

**Why Is Confirmation of a Plan of Reorganization [or Liquidation] Important?** Confirmation of the Plan is necessary because if the Plan is confirmed, the Debtor and all of its creditors are bound by the terms of the Plan. If the Plan is not confirmed, the Debtor may not pay creditors as proposed in the Plan while the Debtor remains in bankruptcy.

**What Is Necessary to Confirm a Plan of Reorganization [or Liquidation]?** Confirmation of the Plan requires, among other things, the vote in favor of the Plan of two-thirds in total dollar amount and a majority in number of claims actually voting in each voting class. If the vote is insufficient, the Bankruptcy Court can still confirm the Plan, but only if certain additional elements are shown including that the plan does not discriminate unfairly, and is fair and equitable, with respect to each class of claims or interests that is impaired under, and has not accepted, the plan.

**Am I Entitled to Vote on the Plan?** Any creditor of the Debtor whose claim is IMPAIRED under the Plan is entitled to vote, if either (i) the creditor's claim has been scheduled by the Debtor and such claim is not scheduled as disputed, contingent, or unliquidated, or (ii) the creditor has filed a proof of claim on or before the last date set by the Bankruptcy Court for such filings. Any claim to which an objection has been filed (and such objection is still pending) is not entitled to vote, unless the Bankruptcy Court temporarily allows the creditor to vote upon the creditor's motion. Such motion must be heard and determined by the Bankruptcy Court prior to the date established by the Bankruptcy Court to confirm the Plan.

**How Do I Determine Whether I Am in an Impaired Class?** Section/Paragraph 2.2C. of the Plan identifies the classes of creditors whose claims are impaired. If your claim is impaired, your vote will be considered by the Bankruptcy Court.

**When Is the Deadline by Which I Need to Return My Ballot?** The Plan is being distributed to all claim holders for their review, consideration and approval. The deadline by which ballots must be returned is <u>August 17, 2021.</u>   Ballots should be mailed to the following address:   <u>dean@deansuttonlaw.com</u>
**Dean G. Sutton, Esq.**
**18 Green Road**
**Sparta, NJ 07871**

**How Do I Determine When and How Much I Will Be Paid?** In Article 2, the Debtor has provided both written and financial summaries of what it anticipates each class of creditors will receive under the Plan.

38

## ARTICLE 9
## DEFINITIONS

**9.1.**    The definitions and rules of construction set forth in §§ 101 and 102 of the Bankruptcy Code shall apply when terms defined or construed in the Code are used in this Plan. The definitions that follow that are found in the Code are for convenience of reference only, and are superseded by the definitions found in the Code.

**9.2.    Administrative Claimant:** Any person entitled to payment of an Administration Expense.

**9.3.    Administrative Convenience Class:** A class consisting of every unsecured claim that is less than or reduced to an amount that the Bankruptcy Court approves as reasonable and necessary for administrative convenience.

**9.4.    Administrative Expense:** Any cost or expense of administration of the Chapter 11 case entitled to priority under Section 507(a)(2) of the Code and allowed under Section 503(b) of the Code, including without limitation, any actual and necessary expenses of preserving the Debtor's estate, any actual and necessary expenses incurred following the filing of the bankruptcy petition by the Debtor-in-Possession, allowances of compensation or reimbursement of expenses to the extent allowed by the Bankruptcy Court under the Bankruptcy Code, the allowed claim of the Trustee for fees and/or reimbursements, and any fees or charges assessed against any of the Debtor's estates under Chapter 123, Title 28, United States Code.

**9.5    Administrative Tax Claim:**  Any tax incurred pursuant to Section 503(b)(1)(B) of the Code.

**9.6.    Allowed Claim:** Any claim against the Debtor pursuant to Section 502 of the Code to the extent that: (a) a Proof of Claim was either timely filed or was filed late with leave of the Bankruptcy Court or without objection by the Debtor, and (b) as to which either (i) a party in interest, including the Debtor, does not timely file an objection, or (ii) is allowed by a Final Order.

**9.7.    Allowed Priority Tax Claim:** A Priority Tax Claim to the extent that it is or has become an Allowed Claim, which in any event shall be reduced by the amount of any offsets, credits, or refunds to which the Debtor or Debtor-in-Possession shall be entitled on the Confirmation Date.

**9.8.    Allowed Secured Claim:** Allowed Secured Claims are claims secured by property of the Debtor's bankruptcy estate (or that are subject to setoff) to the extent allowed as secured claims under § 506 of the Code.

**9.9.    Allowed Unsecured Claim**: An Unsecured Claim to the extent it is, or has become, an Allowed Claim, which in any event shall be reduced by the amount of any offsets, credits, or refunds to which the Debtor or Debtor-in-Possession shall be entitled on the Confirmation Date.

**9.10.    Bankruptcy Code or Code**: The Bankruptcy Reform Act of 1978, as amended and codified as Title 11, United States Code.

**9.11.    Bankruptcy Court**: The United States Bankruptcy Court for the District of New Jersey.

**9.12.    Bankruptcy Rules**: The Federal Rules of Bankruptcy Procedure.

**9.13.    Cash**: Cash, cash equivalents and other readily marketable securities or instruments issued by a person other than the Debtor, including, without limitation, readily marketable direct obligations of the United States of America, certificates of deposit issued by banks and commercial paper of any entity, including interest accrued or earned thereon.

**9.14.    Chapter 11 Case**: This case under chapter 11 of the Bankruptcy Code in which American Limousine LLC is the Debtor-in-Possession.

**9.15 Claim**: Any "right to payment from the Debtor whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured or unsecured; or any right to an equitable remedy for future performance if such breach gives rise to a right of payment from the Debtor, whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, disputed, undisputed, secured or unsecured." 11 U.S.C. § 101(5).

**9.16.    Class**: A category of holders of claims or interests which are substantially similar to the other claims or interests in such class.

**9.17.    Confirmation**: The entry by the Bankruptcy Court of an order confirming this Plan.

**9.18.    Confirmation Date**: The Date upon which the Bankruptcy Court shall enter the Confirmation Order; provided however, that if on motion the Confirmation Order or consummation of the Plan is stayed pending appeal, then the Confirmation Date shall be the entry of the Final Order vacating such stay or the date on which such stay expires and is no longer in effect.

**9.19.   Confirmation Hearing**: The hearing to be held on <u>August 24</u>, 2021 to consider confirmation of the Plan.

**9.20.   Confirmation Order**: An order of the Bankruptcy Court or any amendment thereto confirming the Plan in accordance with the provisions of chapter 11 of the Bankruptcy Code.

**9.21.   Creditor**: Any person who has a Claim against the Debtor that arose on or before the Petition Date.

**9.22.   Debtor** and **Debtor-in-Possession**: American Limousine LLC, the debtor-in-possession in this Chapter 11 Case.

**9.23.   Disputed Claim:** Any claim against the Debtor pursuant to Section 502 of the Code that the Debtor has in any way objected to, challenged or otherwise disputed.

**9.24.   Distributions**: The property required by the Plan to be distributed to the holders of Allowed Claims.

**9.25.   Effective Date**: Pursuant to D.N.J. LBR 3020-1, the effective date of a chapter 11 plan is 30 days after entry of the order confirming the plan unless the plan or confirmation order provides otherwise.

**9.26.   Equity Interest**: An ownership interest in the Debtor.

**9.27.   Executory Contracts**: All unexpired leases and executory contracts as described in Section 365 of the Bankruptcy Code.

**9.28.   Final Order**: An order or judgment of the Bankruptcy Court that has not been reversed, stayed, modified or amended and as to which (a) any appeal that has been taken has been finally determined or dismissed, or (b) the time for appeal has expired and no notice of appeal has been filed.

**9.29.   IRC**: The Internal Revenue Code

**9.30.   Petition Date**: January 8, 2021, the date the chapter 11 petition for relief was filed.

**9.31.    Plan**: This Plan, either in its present form or as it may be altered, amended, or modified from time to time.

**9.32.    Priority Tax Claim**: Any Claim entitled to priority in payment under Section 507(a)(8) of the Bankruptcy Code.

**9.33.    Reorganized Debtor**: The Debtor after the Effective Date.

**9.34.    Schedules**: Schedules and Statement of Financial Affairs, as amended, filed by the Debtor with the Bankruptcy Court listing liabilities and assets.

**9.35.    Secured Creditor**: Any creditor that holds a Claim that is secured by property of the Debtor.

**9.36.    Trustee**: Devanshu L. Modi , the trustee appointed pursuant to 11 U.S.C. § 1183(a) and whose duties are prescribed under 11 U.S.C. 1183(b), the Plan, or the order confirming the Plan.

**9.37.    Unsecured Creditor**: Any Creditor that holds a Claim in the Chapter 11 case which is not a secured Claim.

Respectfully  submitted,

Dated: July 29, 2021

By: /s/Dean G. Sutton
Dean G. Sutton, Esq.
Attorney for Debtor

United States Bankruptcy Court

District of New Jersey

In re:                                                                              Case No. 21-10121-SLM

American Limousine LLC                                                              Chapter 11

    Debtor

# CERTIFICATE OF NOTICE

District/off: 0312-2                          User: admin                                    Page 1 of 2

Date Rcvd: Sep 14, 2021                       Form ID: pdf903                          Total Noticed: 2

The following symbols are used throughout this certificate:

| Symbol | Definition |
|---|---|
| + | Addresses marked '+' were corrected by inserting the ZIP, adding the last four digits to complete the zip +4, or replacing an incorrect ZIP. USPS regulations require that automation-compatible mail display the correct ZIP. |
| # | Addresses marked '#' were identified by the USPS National Change of Address system as requiring an update. While the notice was still deliverable, the notice recipient was advised to update its address with the court immediately. |

**Notice by first class mail was sent to the following persons/entities by the Bankruptcy Noticing Center on Sep 16, 2021:**

| Recip ID | | Recipient Name and Address |
|---|---|---|
| db | + | American Limousine LLC, 365 Rifle Camp Road, Suite 202, Woodland Park, NJ 07424-2776 |
| aty | #+ | American Limousine LLC, 90 Mckee Drive, Mahwah, NJ 07430-2106 |

TOTAL: 2

**Notice by electronic transmission was sent to the following persons/entities by the Bankruptcy Noticing Center.**
Electronic transmission includes sending notices via email (Email/text and Email/PDF), and electronic data interchange (EDI).

NONE

# BYPASSED RECIPIENTS

**The following addresses were not sent this bankruptcy notice due to an undeliverable address, \*duplicate of an address listed above, \*P duplicate of a preferred address, or ## out of date forwarding orders with USPS.**

NONE

# NOTICE CERTIFICATION

**I, Joseph Speetjens, declare under the penalty of perjury that I have sent the attached document to the above listed entities in the manner shown, and prepared the Certificate of Notice and that it is true and correct to the best of my information and belief.**

**Meeting of Creditor Notices only (Official Form 309): Pursuant to Fed .R. Bank. P.2002(a)(1), a notice containing the complete Social Security Number (SSN) of the debtor(s) was furnished to all parties listed. This official court copy contains the redacted SSN as required by the bankruptcy rules and the Judiciary's privacy policies.**

Date: Sep 16, 2021                     Signature:         /s/Joseph Speetjens

---

# CM/ECF NOTICE OF ELECTRONIC FILING

**The following persons/entities were sent notice through the court's CM/ECF electronic mail (Email) system on September 14, 2021 at the address(es) listed below:**

| Name | Email Address |
|---|---|
| Barry J. Roy | on behalf of Creditor Lancer Insurance Company broy@rltlawfirm.com |
| Christian Del Toro | on behalf of Creditor Dynasty Auto Body  Inc. cdeltoro@martonelaw.com, bky@martonelaw.com |
| Daniel H. Reiss | on behalf of Creditor Joselito R. Dela Cruz & Jeff Pangilinan dhr@lnbyb.com |
| Dean G. Sutton | on behalf of Debtor American Limousine LLC dean@deansuttonlaw.com |
| Denise E. Carlon | |

on behalf of Creditor Intellishift dcarlon@kmllawgroup.com  bkgroup@kmllawgroup.com

Devanshu L. Modi

dev.modi@lglmlaw.com

Douglas J. Pick

on behalf of Creditor Lancer Insurance Company dpick@picklaw.net  ezabicki@picklaw.net

Dwayne Stanley

on behalf of Creditor Merchants Automotive Group  Inc. dwayne.stanley@huschblackwell.com

Elizabeth L. Wassall

on behalf of Creditor ORION FIRST FINANCIAL AS ACCOUNT SERVICER FOR MIDLAND STATE BANK
ewassall@logs.com  njbankruptcynotifications@logs.com;logsecf@logs.com

Michael R. Herz

on behalf of Creditor Mahwah Property Owner  LLC mherz@foxrothschild.com, cbrown@foxrothschild.com

Rebecca K. McDowell

on behalf of Creditor Firstlease  Inc. rmcdowell@slgcollect.com

Rosemarie E. Matera

on behalf of Creditor Steven Bennett Blau law@kmpclaw.com

Stephan Hornung

on behalf of Creditor M&T BANK hornung@lsellp.com

Stephen V. Falanga

on behalf of Unknown Role Type Kevin and Anna Taylor sfalanga@thewalshfirm.com
chemrick@thewalshfirm.com;ntravostino@walsh.law

U.S. Trustee

USTPRegion03.NE.ECF@usdoj.gov

TOTAL: 15